**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Estelle Lazell, | ) | No. CV-10-02660-PHX-NVW |
| Plaintiff, | ) ) | **ORDER** |
| vs. | ) ) | |
| Wyeth, LLC, et al., | ) ) | |
| Defendants. | ) ) ) | |

Before the Court is Defendants Wyeth and Pfizer's Motion to Transfer (Doc. 11).

**I.    Background**

On March 4, 2003, the Judicial Panel for Multidistrict Litigation designated District Judge William R. Wilson, Jr., Eastern District of Arkansas, as the transferee court for all individual, class action, and other federal cases arising out of the sale or use of prescription hormone therapy medications. On July 9, 2004, the plaintiffs in the cases for which Defendants Wyeth and Pfizer seek transfer and those assigned to the undersigned judge filed their original and first amended complaints in a single multi-plaintiff case in the District Court for the District of Arizona. On January 15, 2005, the case was transferred to the Eastern District of Arkansas to be part of MDL Docket No. 4:03-CV-1507-WRW ("MDL 1507") and assigned Case No. 4:05-CV-0077-WRW.

1   Under a series of Practice and Procedure Orders, the plaintiffs conducted extensive
2   fact discovery. Defendants established depositories in Little Rock, Arkansas, and
3   Washington, D.C., where documents were produced, stored, digitized, and reviewed. As
4   of December 2010, the two depositories contained more than 3.1 million documents
5   (nearly 28 million pages) produced by various defendants. As part of generic discovery,
6   the plaintiffs deposed more than one hundred defense witnesses. Judge Wilson
7   designated September 1, 2009, as the generic discovery cutoff date for claims against
8   Defendants Wyeth and Upjohn.

9   On November 22, 2010, Judge Wilson determined that the inclusion of certain
10  cases in MDL 1507, including the Arizona case, 4:05-CV-0077, was no longer warranted.
11  He designated cases for remand that had completed generic discovery from Defendants,
12  involved only allegations of breast cancer injury against only Defendants Wyeth and
13  Upjohn, and had been subject to his order authorizing case-specific discovery. The
14  designated cases were remanded to transferor courts for further proceedings, including
15  additional discovery, pretrial motions practice, and final disposition.

16  Regarding the Arizona multi-plaintiff case, Judge Wilson ordered that every
17  plaintiff other than the first-named plaintiff be dropped and that the dropped plaintiffs
18  were permitted to file new, individual complaints in the appropriate venue within thirty
19  days. Under his order, for the application of statutes of limitations, laches, or other time-
20  bar laws, the filing date of the newly filed actions are deemed to relate back to the date
21  that the dropped plaintiffs originally filed their complaint.

22  On March 24, 2011, Defendants Wyeth and Pfizer moved to transfer all of the
23  remanded Arizona cases to the undersigned judge for pretrial coordination. At the time of
24  filing the Motion to Transfer, there were a total of 43 cases remanded from MDL 1507 to
25  the District of Arizona, filed in three divisions, and assigned to 16 different judges.

## II. Analysis

Local Civil Rule 42.1 provides, in part:

> (a) **Related Cases.** Any party may file a motion to transfer the case or cases involved to a single Judge whenever two or more cases are pending before different Judges and any party believes that such cases: (1) arise from substantially the same transaction or event; (2) involve substantially the same parties or property; (3) involve the same patent, trademark, or copyright; (4) call for determination of substantially the same questions of law; or (5) for any other reason would entail substantial duplication of labor if heard by different Judges.

Defendants Wyeth and Pfizer urge the undersigned judge to transfer thirty-six hormone therapy products liability cases for "pretrial coordination purposes" only. Plaintiff Estelle Lazell, along with the plaintiffs in the other cases, strongly objects.

Defendants Wyeth and Pfizer do not contend that these cases arise from substantially the same transaction or event, involve the same parties or property, or call for determination of substantially the same questions of law. Instead, they contend that pretrial coordination will "maximize judicial economy by ensuring that discovery plans are developed in conjunction with one another so that discovery in various individual cases can proceed in an orderly and efficient manner, that there will not be inconsistent rulings on discovery and other pretrial issues, and that the parties can efficiently raise issues that concern all or particular subsets of plaintiffs before a single judge." They further contend that pretrial coordination will prevent substantial duplication of labor among judges.

In opposition to the Motion to Transfer, Plaintiff contends that imposing further "pretrial coordination"—after nearly seven years of pretrial coordination in MDL 1507—would cause further delay and confer no meaningful benefit to the parties or the court. She contends that there is no fear of substantial duplication of labor because the remanded cases have completed generic discovery and are ready for case-specific discovery, pretrial motions, and trial. She also notes that there are additional Arizona plaintiffs whose cases have not yet been remanded from MDL 1507.

1    Case-specific discovery for some of the Arizona cases remanded from MDL 1507
2 began more than a year ago. It could have begun for all cases, but Defendants objected.
3 In addition to different plaintiffs, the cases generally have different prescribing
4 physicians, different treating physicians, and different family members. Although all of
5 the cases involve breast cancer and hormone replacement therapy, evidence regarding the
6 medication(s) prescribed, duration of usage, reason for usage, type of cancer, and type of
7 treatment will differ among the cases. If an expert testifies in a case, the testimony will
8 involve mostly case-specific issues.

9    All these cases need intensive case management in light of the differing
10 circumstances of each case, which requires individual judicial scrutiny. Some will have
11 more and some less remaining to be done. Each can be set on a schedule that fits its own
12 circumstances. A critical concern in each case will be the availability of trial time for the
13 trial judge, and that can be managed only by the trial judge. One judge cannot set firm
14 trial dates for 15 other judges. Consolidated management of all 43 cases would slow
15 most to the speed of the slowest cases. It would squander the resources of this court, not
16 economize them, to back all the cases up on one judge's calendar when many judges are
17 available. Thus, these 43 cases in need only of individual discovery and scheduling are
18 best processed individually.

19    Defendants contend that common issues will arise in the cases, such as statute of
20 limitations and the scientific validity and reliability of expert testimony. Defendants ask
21 that discovery and other case processing be coordinated so that those common issues can
22 be briefed and decided at the same time by the same judge. Defendants appear to argue
23 for transfer to the undersigned judge for some if not all dispositive motions, not just pre-
24 trial case administration.

25    The suggested common issues are common only at a high level of generality.
26 Actual application of those principles will require fact-intensive inquiry into each case,
27 which will achieve little economy in assigning all 43 cases to one judge. To the extent
28 general principles of law must be decided, these cases are no different from many others

in which different judges of this court are called upon to decide general principles upon scrutiny of variable individual facts. It is not necessary to make one such decision formally binding upon other judges in other cases, and much economy can be achieved by a judge's careful exposition of general questions, which is often helpful to the other judges of this court.

This is true of possible challenges to the scientific validity and reliability of expert testimony. While general questions may arise that apply to other cases, test case litigation of such questions in the first cases ready for decision is not demonstrably inferior to formal transfer to one judge. This is especially true where transfer would come at a cost of delay for many and no benefit at all to the cases in which such issues do not arise. The plaintiff and defense lawyers are largely the same in these many cases, so there is every expectation that they will make thorough presentations in whatever cases are first ready, motivated by the benefit to all their cases from successful outcomes in the first.

Further, if a claim is challenged as time-barred, whether the individual plaintiff had actual knowledge that she had an actionable claim[1] before widespread publication of the Women's Health Initiative July 9, 2002 report regarding hormone replacement therapy will depend on case-specific evidence. *See, e.g.*, *In re Prempro Products Liability Litigation*, 586 F.3d 547, 564 (8th Cir. 2009). In Arizona, "determination of a

---

[1] Under Arizona law, a cause of action for products liability accrues when the plaintiff discovers or by the exercise of reasonable diligence should have discovered that she has been injured by the defendants' negligent conduct. *Logerquist v. Danforth*, 188 Ariz. 16, 19-20, 932 P.2d 281, 284-85 (Ct. App. 1996); *Anson v. American Motors Corp.*, 155 Ariz. 420, 423, 747 P.2d 581, 584 (Ct. App. 1987). "The rationale behind the discovery rule is that it is unjust to deprive a plaintiff of a cause of action before the plaintiff has a reasonable basis for believing that a claim exists." *Gust, Rosenfeld & Henderson v. Prudential Ins. Co.*, 182 Ariz. 586, 589, 898 P.2d 964, 967 (1995); *accord Doe v. Roe*, 191 Ariz. 313, 330, 955 P.2d 951, 968 (1998). In Arizona, a products liability action must be filed within two years after the cause of action accrues. A.R.S. §§ 12-542 (two-year limitations period), 12-551 (limitations period for product liability actions is as prescribed in § 12-542). This action was filed on July 9, 2004, exactly two years after widespread publication of the Women's Health Initiative report began.

1  claim's accrual date usually is a question of fact, with the inquiry centering on the
2  plaintiff's knowledge of the subject event and resultant injuries, whom the plaintiff
3  believed was responsible, and the plaintiff's diligence in pursuing the claim." *Logerquist*
4  *v. Danforth*, 188 Ariz. 16, 22, 932 P.2d 281, 287 (Ct. App. 1996).  The commonalities in
5  multiple statute of limitations motions will most likely yield to far more extensive inquiry
6  into the facts and evidence of each case.

7  After almost seven years of litigation, each of the plaintiffs in the cases remanded
8  from MDL 1507 is entitled to prompt, efficient completion of case-specific discovery and
9  briefing and determination of pretrial motions.  Efficiencies to be obtained through
10 coordinated pretrial case management presumably were accomplished through MDL
11 1507.  Any attenuated further judicial economy from a second round of pretrial
12 coordination of overwhelmingly individual discovery, motions, and trial preparation
13 would come only at the cost of considerable delay for most cases and of squandering the
14 judicial resources of this court to bring many cases to trial.  These cases now need to be
15 brought to trial as quickly as possible and each case on its own terms.

16 IT IS THEREFORE ORDERED that Defendants Wyeth and Pfizer's Motion to
17 Transfer (Doc. 11) is denied.

18 IT IS FURTHER ORDERED that the Clerk of the Court is directed to file this
19 Order in the following cases: 2:10-cv-02660-NVW, 2:10-cv-02661-ROS, 2:10-cv-02662-
20 JAT, 2:10-cv-02668-NVW, 2:10-cv-02672-JWS, 2:10-cv-02676-JRG, 2:10-cv-02678-
21 JRG, 2:10-cv-02680-JWS, 2:10-cv-02685-DGC, 2:10-cv-02686-RJB, 2:10-cv-02690-
22 FJM, 2:10-cv-02692-NVW, 2:10-cv-02693-JAT, 2:10-cv-02694-JAT, 2:10-cv-02702-
23 ROS, 2:10-cv-02703-NVW, 2:10-cv-02704-RJB, 2:10-cv-02708-SRB, 2:10-cv-02709-
24 JWS, 2:10-cv-2710-ROS, 2:10-cv-02711-NVW, 2:10-cv-02717-NVW, 2:10-cv-02720-
25 GWS, 2:10-cv-02737-ROS, 3:10-cv-08240-NVW, 3:10-cv-08241-DGC, 3:10-cv-08244-
26 JAT, 4:10-cv-00744-RCC, 4:10-cv-00745-RCC, 4:10-cv-00746-FRZ, 4:10-cv-00747-
27 CKJ, 4:10-cv-00748-AWT, 4:10-cv-00752-CKJ, 4:10-cv-00753-AWT, 4:10-cv-00756-
28 RCC, 4:10-cv-00758-FRZ, 4:10-cv-00759-AWT, 4:10-cv-00761-RCC, 4:10-cv-00762-

1  RCC-HCE, 4:10-cv-00763-DCB, 4:10-cv-00764-AWT-BPV, 4:10-cv-00766-RCC, and
2  4:10-cv-00768-AWT.
3       DATED this 19th day of April, 2011.

_____
Neil V. Wake
United States District Judge